2016 OK CIV APP 46

**Kenneth A. HOLLINGSHEAD, Plaintiff/Appellant,**

**v.**

**John ELIAS, Jr., Daveau, Inc., and Reserve Management, Inc., Defendants/Appellees.**

**Case No. 112,644**

Court of Civil Appeals of Oklahoma, DIVISION II.

FILED November 19, 2015

Mandate Issued: 07/18/2016

Rehearing Denied January 4, 2016

W. Creekmore Wallace, II, Sapulpa, Oklahoma, for Plaintiff/Appellant.

Melissa G. Holderby, Holderby Law, PLLC, Bristow, Oklahoma, for Defendants/Appellees.

OPINION BY JANE P. WISEMAN, JUDGE:

¶1 Kenneth Hollingshead appeals decisions of the trial court finding that he did not have an easement over property owned by the defendants and awarding attorney fees and costs to John Elias, Jr., Daveau, Inc., and Reserve Management, Inc. (Defendants).

We conclude that Hollingshead's appeal of the decision regarding the easement is untimely and must be dismissed. Concluding that Hollingshead has failed to show trial court error on the question of Defendants' entitlement to attorney fees and costs, we affirm this part of the trial court's decision. However, the trial court's ruling as to amount must be reversed.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On August 11, 2010, Hollingshead, Basil Edgar Beach, Jr., and Barbara Ann Beach filed a petition naming as Defendants Daveau, Inc., John Elias, Jr., John Elias, Sr., Elco Resources, LLC, and John Does One through Five. The Plaintiffs brought claims for prescriptive easement, interference with easement by necessity, and trespass. In their answer filed on November 18, 2010, the Defendants admitted some allegations, denied other allegations, and claimed insufficient knowledge of the remaining allegations. They also stated affirmative defenses of estoppel and unclean hands and asserted counterclaims for trespass, assault, and quiet title.

¶ 3 The Defendants filed a motion for summary judgment on May 16, 2011. On May 31, 2011, a joint dismissal with prejudice was filed in which Basil Edgar Beach, Jr., and Barbara Ann Beach and the Defendants "dismiss[ed] all of their claims and counterclaims against each other." The dismissal left Hollingshead as the sole Plaintiff.

¶ 4 Hollingshead filed an amended petition on October 7, 2011, naming as Defendants John Elias, Jr., Daveau, Inc., and Reserve Management, Inc. Hollingshead asserted claims for implied easement, interference with easement, trespass and negligent damage to property, as well as unjust enrichment and constructive trust.

¶ 5 In their answer, Defendants again admitted some allegations, denied other allegations, and claimed insufficient knowledge of the remaining allegations. Defendants asserted affirmative defenses of unclean hands, estoppel, statute of limitations, assumption of risk, fraud, illegality, contributory negligence, license, res judicata, and waiver. They also asserted counterclaims for property damage, assault and battery, quiet title, abuse of process, defamation, and intentional infliction of emotional distress.

¶ 6 According to the docket sheet, on November 13, 2012, Defendants filed a request to bifurcate the trial. On January 25, 2013, a minute order was filed that stated the trial court denied Defendants' motion for summary judgment without prejudice to refiling. It appears the request to bifurcate the trial was granted because at the trial held March 27 and 28, 2013, the only issues tried were those relating to Hollingshead's easement claims.[1]

¶ 7 After taking the matter under advisement, the trial court issued a journal entry of judgment which was filed on May 9, 2013, denying Hollingshead's claims for easement by prescription, implied easement, and easement by necessity. The docket sheet indicates that on May 30, 2013, Hollingshead filed an "Alternative Motion for Interlocutory Appeal Determination or Stay of Enforcement of Journal Entry." On June 5, 2013, Defendants filed a motion for attorney fees and costs, seeking $67,944.28 in attorney fees for both current and former counsel and $2,614.56 in costs.

¶ 8 On July 3, 2013, the docket sheet indicates Defendants voluntarily dismissed all of their remaining counterclaims. This dismissal was also noted by the trial court in a minute order filed August 16, 2013. The minute order also states in part that the court denies Defendants' application for attorney fees based on 16 O.S. § 79(A). The trial court found:

> Basil Edgar Beach, Jr. and Barbara Ann Beach, not [Hollingshead], executed the General Warranty Deed wherein they conveyed any right they may have had to a right-of-way easement across the E2 NE4 of Section 35, T14N, R7E to [Hollingshead]. The Beaches clouded Defendant[s'] title, not [Hollingshead]....

1. The trial court later stated in a minute order filed August 16, 2013: "This case was bifurcated, with the Court trying the issue of an easement by necessity and/or implication and/or prescription on and over E2 NE4 Sec. 35, T14N, R7E on March 27 and 28, 2013."

The court further determined that Defendants cannot recover attorney fees pursuant to 12 O.S. § 940 and that Hollingshead's attempt to obtain an easement across Defendants' property did not rise to the level of bad faith. The court found that Daveau, Inc., learned of the easement claim by Hollingshead and the Beaches on or before June 10, 2010. "Daveau forwarded a demand to remove this cloud, together with a curative instrument. [Hollingshead] refused to execute the curative instrument and filed suit alleging his right to an easement across Daveau's real property." Daveau then asked the court to quiet title to the property and the trial court did. The court found "Daveau is entitled to attorney fees and costs under 12 [O.S.] 1141, et seq. for that portion of this lawsuit that involves the question of the existence of an easement."

¶ 9 In an order filed December 16, 2013, the trial court awarded Defendants $57,944.28 in attorney fees and $2,614.56 for costs. On December 26, 2013, Plaintiff filed a motion to vacate the attorney fee judgment attaching a proposed journal entry of judgment that Plaintiff claims "avoids a lengthy history of the case in perfecting an appeal and establishes the Journal Entry to be the final appealable instrument as was agreed to during [the] June 27th hearing." At the hearing on June 27, 2013, Hollingshead's attorney stated:

> And finally, Your Honor, I'm sorry, I need to learn to draw up an order or to require a reporter all the time, that's why I got one here today. But when we came in here on the conference we had after I asked the Court for this interim order; for the stay order, or for the right to take this intermediate appeal, we came in here and my understanding was he wasn't going to dismiss his claims if he won and got money off this. He was going to dismiss his claims. And now he says he was only going to dismiss his claims, I guess if he gets $200,000, what he's asking for, these treble damages he's now claiming because of my client's bad faith.
>
> Your Honor, that wasn't my understanding of what the agreement was when we entered into, so that I could have a—what I did it for so that I was sure I had a final

order that was appealed from. And so when he said he would dismiss all of that I would have a final order that could be appealed from and the attorney fees and the Court would have something on which to base an appeal bond. That's the reason that I agreed to all that. All of a sudden today it's no, I just, I just did this, if I don't win this I'm not going to dismiss the rest of this stuff. That's not my understanding of what counsel advised the Court during the—during the last hearing we had and before these attorney fees were submitted so.

The trial court then asked Hollingshead's attorney if the agreement was reduced to writing or memorialized, and the attorney responded that it was not. He further stated:

> And that's why I apologize, I learned since that I need to reduce these or get a reporter. But obviously we had a real serious misunderstanding. My motivation at that time was just to make sure that I had an appealable order, and I had an appealable order if all these, all the rest of this litigation went away. Now he says I'm not dismissing the rest of this stuff unless I get my attorney fees. That wasn't my understanding of the agreement that we entered into before we came in here today.

Less than a week later, on July 3, 2013, Defendants dismissed their remaining claims.

¶ 10 On February 14, 2014, an order was filed granting Hollingshead's motion to vacate the attorney fee award, re-granting Defendants' motion for attorney fees and costs, and setting a supersedeas bond for Hollingshead in the amount of $75,000. The trial court stated: "Appeal of all issues in this matter will commence on the filing of this Journal Entry, which will be the final appealable order of the March, 2013, trial, and the order awarding attorney fees and costs."

¶ 11 Hollingshead appeals.

## STANDARD OF REVIEW

¶ 12 Before we determine the merits of this case, we must first determine if this Court has jurisdiction over the substantive decision of the trial court on the ease-

ment question. We are "duty-bound to inquire *sua sponte* into [our] own jurisdiction over any pending matter as well as that of the lower court whence the case came by appeal." *Broadway Clinic v. Liberty Mut. Ins. Co.*, 2006 OK 29, ¶ 25, 139 P.3d 873. Determination of this Court's jurisdiction presents a question of law. *State ex rel. Cartwright v. Oklahoma Ordnance Works Auth.*, 1980 OK 94, ¶ 4, 613 P.2d 476. The question of a party's entitlement to attorney fees is also a question of law, which we review *de novo*. *See Finnell v. Seismic*, 2003 OK 35, ¶ 7, 67 P.3d 339. We have "plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings." *Id.* "The amount to be awarded as a fee for the services of a legal practitioner is a matter left to the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Id.* ¶ 8.

## ANALYSIS

### 1. Easement Issues

¶ 13 We must first inquire into our jurisdiction. "It is well settled in Oklahoma jurisprudence that timely filing of the petition in error commencing the appeal is jurisdictional and failure to file an appeal within the statutory time is fatal, placing the matter beyond this Court's power of review." *Davis v. Martin Marietta Materials, Inc.*, 2010 OK 78, ¶ 1, 246 P.3d 454. The journal entry of judgment denying Hollingshead's easement claims was filed on May 9, 2013. Counterclaims were still pending when Defendants filed their motion for attorney fees and costs on June 5, 2013. However, all the claims of the parties were fully disposed of after Defendants voluntarily dismissed their remaining counterclaims on July 3, 2013. After this dismissal, the sole issue remaining before the trial court was Defendants' application for attorney fees and costs.

¶ 14 Title 12 O.S.2011 § 990A provides:

An appeal to the Supreme Court of Oklahoma, if taken, must be commenced by filing a petition in error with the Clerk of the Supreme Court of Oklahoma within thirty (30) days from the date a judgment, decree, or appealable order prepared in conformance with Section 696.3 of this title is filed with the clerk of the trial court. If the appellant did not prepare the judgment, decree, or appealable order, and Section 696.2 of this title required a copy of the judgment, decree, or appealable order to be served upon the appellant, and the court records do not reflect the service of a copy of the judgment, decree, or appealable order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the judgment, decree, or appealable order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the judgment, decree, or appealable order was served upon the appellant.

Title 12 O.S.2011 § 990.2(D) provides: "The filing of a motion for costs or attorney fees shall not extend or affect the time to appeal."

¶ 15 We conclude that Hollingshead's appeal is untimely. In reaching our decision, we find persuasive this Court's holding in *Raven Resources, LLC v. Legacy Bank*, 2009 OK CIV APP 101, 229 P.3d 1273. At issue in *Raven* was whether an order that was interlocutory at the time it was entered became appealable after the plaintiffs dismissed all of their remaining claims. *Id.* ¶ 7. The Court noted that this was a matter of first impression. *Id.* ¶ 8. The Court framed the issue as follows: "whether a party may appeal an order that is not appealable when entered but becomes potentially appealable as a result of subsequent voluntary action by that party." *Id.* The Court noted that its jurisdiction is limited to appeals from judgments, final orders, orders that provide provisional remedies, certain interlocutory orders, interlocutory orders that have been certified by the trial court for immediate appeal, interlocutory orders in cases involving multiple parties and multiple claims that are certified for immediate appeal. *Id.* The Court noted that when the trial court's order dismissing the defendants' claims was entered, it was not appealable because it did not meet any of the statutory requirements. *Id.* The Court held that the voluntary dismissal of plaintiffs' remaining claims converted the order granting the motion to dismiss into a final order. *Id.* ¶ 13.

¶ 16 Citing *Raven*, another division of this Court noted:

> So, where the trial court adversely adjudicates fewer than all of a plaintiff's claims, and the plaintiff subsequently voluntarily dismisses the remainder of his or her unadjudicated claims, the prior order adversely adjudicating some but not all of plaintiff's claims is then final and subject to appeal.

*Schoenhals v. PSR Investors, Inc.*, 2013 OK CIV APP 27, ¶ 10, 299 P.3d 874. In *Kurtz v. Clark*, 2012 OK CIV APP 103, ¶ 7, 290 P.3d 779, this Court noted that a January order granting summary judgment in favor of the defendants and an order denying plaintiffs' motion for new trial were not appealable because one of the defendants still had counterclaims pending against the plaintiff. This Court noted that the defendant's subsequent dismissal of his counterclaims and cross-claims rendered the two earlier "orders appealable for the first time." *Id.*

¶ 17 Hollingshead did not file his appeal until March 13, 2014, within 30 days of the February 14, 2014, order vacating the previous judgment for attorney fees and costs, re-granting Defendants' motion for fees and costs, and setting a $75,000 supersedeas bond. Although the trial court attempted, and clearly intended, to make this February 2014 order the final, appealable order as to the March 2013 trial, the trial court was without authority to extend the appeal time in this manner. The time for appeal of the May 9, 2013, journal entry of judgment memorializing the trial court's decision on the easement issues began on July 3, 2013, when Defendants dismissed their counterclaims. The only issue then remaining was Defendants' application for attorney fees and costs, which did not extend the appeal time for the decision on the issues tried on March 27 and 28, 2013. Because it was untimely, we dismiss Hollingshead's appeal of the trial court's decision on the merits of his claims involving the easement issues in its May 9, 2013, judgment.

### 2. Attorney Fee and Costs Entitlement

¶ 18 The question of attorney fees and costs, however, is properly before this Court. The trial court awarded attorney fees and costs pursuant to 12 O.S. § 1141, *et seq.* Section 1141.1 is the first section of the Nonjudicial Marketable Title Procedures Act (NMTPA).

¶ 19 In their application for attorney fees, costs, and interest, Defendants state that on December 15, 2009, Hollingshead "filed an easement of record in Book 711, Page 334, at the Office of the County Clerk of Creek County against an 80-acre tract of land owned and operated by Defendants, which borders [Hollingshead's] own land." (Footnote omitted.) Defendants maintain that neither Hollingshead nor his predecessors in interest had an easement over Defendants' land. Defendants claim: "On June 2, 2010, Defendants made written demand upon [Hollingshead] to remove this cloud within 30 days, in accordance with the statutory procedure to cure title per 12 O.S. § 1141.3." According to Defendants, Hollingshead "refused to remove the unlawful cloud" and attorney fees should be awarded pursuant to the NMTPA and other statutory provisions. Attached to the fee application are the affidavit of Jasen R. Corns, counsel for Defendants, and various receipts, time records, and billing documents. There are no copies of communications between the parties or proposed curative instruments.

¶ 20 Title 12 O.S.2011 § 1141.5 allows a trial court to award attorney fees if a person or entity uses the NMTPA's alternative procedures to quiet title. Section 1141.5 provides in part:

> A. If a requestor prepares a notice pursuant to [12 O.S. § 1141.3] and:
>
> 1. The respondent receives the notice and fails to respond, or
>
> 2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or
>
> 3. The respondent refuses to claim the notice, or
>
> 4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the

subject parcel pursuant to Section 1141 of Title 12 of the Oklahoma Statutes, and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, *the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to Section 3 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action against the respondent, including costs and reasonable attorney fees.*

B. If a defendant in the quiet title action who either failed to respond to a notice pursuant to Section 4 of this act or who refused to execute and deliver a curative instrument or take corrective action identified in the notice prevails in the quiet title action, the defendant in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the defendant in responding to the notice from the requestor pursuant to [12 O.S. § 1141.4] of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the defendant or asserting an affirmative defense with respect to the interest or apparent interest forming the basis of the action against the defendant, including costs and reasonable attorney fees.

12 O.S.2011 § 1141.5(emphasis added) (footnotes omitted). The "[p]rocedures alternative to quiet title action to remove cloud on title" are set out in 12 O.S.2011 § 1141.3, which provides:

A. Any person or any entity having an interest or claiming an interest with respect to any parcel of real property who in good faith asserts that there is an instrument filed in the real property records of the county in which the real property, or some portion of the real property, is located and who would otherwise be required to file a quiet title action with respect to the parcel pursuant to the provisions of Section 1141 of Title 12 of the Oklahoma Statutes, may use the procedures authorized by this act to attempt to remove a cloud or an apparent cloud on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action.

(Footnote omitted.)

¶ 21 Title 12 O.S.2011 § 1141.3(C) sets out the information required to be included in a request:

C. If making a request pursuant to this act, the requestor shall send a notice to the respondent which shall include:

1. The specific identity of the person or entity requesting the respondent to execute or to execute and deliver a curative instrument or take other corrective action the purpose of which is to remove a cloud or an apparent cloud on the title of the subject parcel;

2. A specific identification of the conveyance, instrument or other document, by reference to:

a. the county or counties in which the instrument or document is filed for record,

b. the book and page number in which the instrument or other document is recorded,

c. the identity of the grantor or the person or entity subscribing the instrument, (if different than the identified grantor),

d. the identity of the grantee or grantees,

e. the legal description of the real property contained in the instrument,

f. the date the instrument was executed,

g. the date the instrument was filed for record, and

h. such other information as may be required in order for the respondent to know with reasonable certainty the exact instrument or instruments to which the requestor is referring;

3. The nature of the assertion by the requestor regarding the effect of the in-

strument or document as a cloud or an apparent cloud upon the title of the subject parcel; and

4. The nature of the corrective action sought by the requestor, including, but not limited to, the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

Subsection D mandates that a person requesting action pursuant to the NMTPA must "prepare and send with the notice the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action." 12 O.S.2011 § 1141.3(D).

¶ 22 The notice and timeline requirements are set out in 12 O.S.2011 § 1141.4. Section 1141.4(A) directs that a requestor must not only prepare the notice set out in § 1141.3, but also transmit the notice to the respondent by certified mail. 12 O.S.2011 § 1141.4(A). The respondent is required to respond within 30 days. 12 O.S.2011 § 1141.4(B). The "respondent may ask for clarification by the requestor or for further information prior to making either a negative response or an affirmative response." 12 O.S. 2011 § 1141.4(C). "The respondent may communicate with the requestor within the period of time required for the respondent to make a response to the requestor, but any request made pursuant to this subsection shall not extend the time within which to respond." 12 O.S.2011 § 1141.4(C). The respondent may, in the alternative, "make a formal request of the requestor for clarification or for further information by certified mail if the formal request for clarification or additional information is received by the original requestor within the original period of time prescribed by subsection B of this section for a response by the respondent." 12 O.S.2011 § 1141.4(D). "If a respondent makes a formal request for clarification or for additional information, the original requestor shall have a period of twenty (20) days within which to transmit a clarification or additional information." 12 O.S.2011 § 1141.4(D). "The respondent shall then have a period of twenty (20) days from the date the clarification or additional information is received in order to provide a final response." 12 O.S.2011 § 1141.4(D). "If a respondent declines to execute and deliver the curative instrument requested or take the corrective action requested, and the respondent communicates the refusal to the requestor, the requestor may pursue the remedies authorized by this section." 12 O.S.2011 § 1141.4(E).

■ ¶ 23 "Oklahoma follows the American Rule as to the recovery of attorney fees. The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery." *State ex rel. Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 16, 61 P.3d 234.

■ ¶ 24 Hollingshead argues "that the curative instrument provided [to him] was inadequate to entitle [Defendants] to attorney fees under its Fair Marketable Title Act." He claims, "The curative instrument sent by counsel for Daveau and Mr. Elias covered 80 acres of which 40 was released (See Defendant's Exhibit 2 T–45.)" Defendants argue in response that the quitclaim deed to the north 40 acres was filed without notice to Defendants a year and a half later, in the summer of 2011. Hollingshead also claims, "Nowhere in the curative instrument sent to [Hollingshead] and Mr. & Mrs. Beach is there any reference to granting a license to any party to use the road."

¶ 25 Despite any dispute about the adequacy of the notice and curative instrument on which Defendants rely, Hollingshead did not designate any exhibits for inclusion in the appellate record. In an order dated February 3, 2015, the Supreme Court noted that non-designated items were included in the Record on Appeal in contravention of Supreme Court Rule 1.33(a). 12 O.S. Supp. 2014, ch. 15, app. 1. One of the items listed as non-designated was "One Envelope of Exhibits from Trial held on March 27 & 28, 2013." The Supreme Court ordered the Supreme Court Clerk "to return the non-designated items to the Creek County District Court Clerk."

¶ 26 As required by Supreme Court Rule 1.33(c), 12 O.S. Supp. 2013, ch. 15, app. 1,

"The appellant has the burden of monitoring the preparation of the appellate record and seeking relief from the trial court for its timely completion." *See also State v. Price*, 2012 OK 51, n. 7, 280 P.3d 943 ("The appellant bears total responsibility for including in the appellate record all materials necessary for corrective relief. . . . The appellant bears the burden to monitor the case and verify that everything relied upon for appeal was provided to the Court as intended.")

¶ 27 In *Price*, the Supreme Court re-affirmed the well-established principle: "Legal error may not be presumed from a silent record; it must be affirmatively demonstrated. On review, we always indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supporting the trial court's judgment." *Id.*

¶ 28 The trial court found "Daveau forwarded a demand to remove this cloud, together with a curative instrument. [Hollingshead] refused to execute the curative instrument and filed suit alleging his right to an easement across Daveau's real property." (Emphasis omitted.) It further found that Daveau then asked the court to quiet title to the property and the trial court did. The court concluded "Daveau is entitled to attorney fees and costs under 12 [O.S.] 1141, et seq. for that portion of this lawsuit that involves the question of the existence of an easement." Because the curative instrument and the correspondence between Hollingshead and Defendants were not included in the appellate record, we must presume the trial court's decision on the issue of entitlement to attorney fees and costs pursuant to the NMTPA is correct and that Defendants complied with the NMTPA's procedures. We cannot assume error based on argument alone without support from the record. *Price*, 2012 OK 51, n. 7, 280

P.3d 943. Accordingly, the decision of the trial court on entitlement to attorney fees and costs is affirmed.

### 3. Amount of Attorney Fee and Costs Award

¶ 29 The trial court in its minute order filed November 22, 2013, found that Hollingshead's counsel had stipulated that Defendants' counsel's hourly rate of $200 was reasonable and customary. The minute order further states that Defendants' counsel had "represented, as an officer of the court, that the invoice attached to his application filed October 3, 2013, represented only time expended in the quiet title action and road easement dispute, except for 17.7 hours"[2] and that Hollingshead had disputed a further 4.4 hours billed by Defendants' attorney. Although the application originally sought $67,944.28 in attorney fees,[3] the trial court awarded $57,944.28 as set forth in its minute order and subsequent February 14, 2014, order. We cannot determine how the trial court reached this figure.

¶ 30 In *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, the Supreme Court established: "When a question on appeal presents the issue of reasonableness of attorney's fees awarded by the court, abuse of discretion by the trial judge is the standard of review. Therefore, the trial court should set forth with specificity the facts, and computation to support [its] award." *Id.* ¶ 22. Because we are unable to ascertain how the trial court computed the ultimate fee, this order must be reversed and remanded for further proceedings.

¶ 31 First, Defendants' former counsel's hourly rate is not stated on his billing invoice attached to the application for fees, nor is any time amount or increment assigned to

2. Despite counsel's representation, it is incumbent on the trial court to examine counsel's time records and documentation to ensure that its order correctly awards an attorney fee only for time spent on issues for which fees are awardable. The trial court was correct in its August 16, 2013, minute order in which it initially found after reviewing the application for fees and costs: "The Court will not award fees and costs for services rendered beyond the scope of 12 [O.S.]

1141, et seq. The attorney invoices and billing records attached to the application are vague and do not specify, in many instances, what services were rendered for which part of this case."

3. This amount includes $3,120 sought on behalf of Defendants' former counsel and $64,824.28 sought by current counsel.

any service set forth on his invoice.[4] Further, because it is never stated, we cannot determine if the trial court used $200 as the reasonable hourly rate for current counsel throughout the litigation. And, it is unclear whether any of current counsel's fees were awarded at $250 an hour as requested in some of his time records attached to the application, a rate apparently not stipulated to by Hollingshead's counsel as reasonable. We further note that current counsel billed Defendants for a $7,000 "trial retainer," but there are no time records showing actual billable trial time.

¶ 32 We also did not see disclosed anywhere in the record the total number of hours for which compensation was sought. Although required by *Burk*, it is also unclear how many hours the trial court found to be reasonable and necessary to perform the legal work associated with the successful resolution of this litigation. Without a finding as to hourly rate and the number of reasonable and necessary hours spent, no computation is possible.

¶ 33 Additionally, current counsel's billing records totaling attorney fees requested of $64,824.28 also include certain items (service fees, witness fees, photographic prints) which do not constitute recoverable attorney fees.[5] Attorney fees and costs must be set out separately, and itemized, to allow appropriate consideration by both trial and appellate courts.

¶ 34 With the above deficiencies, and in the absence of any calculation by the trial court, we simply cannot review the reasonableness of this award. As mandated in *Burk*, this award must be considered an abuse of discretion, requiring reversal and re-determination on remand.

## CONCLUSION

¶ 35 We dismiss Hollingshead's appeal challenging the trial court's decision on the merits of the case because his appeal on these questions was untimely. The appellate record does not support Hollingshead's claim of trial court error in its ruling on entitlement to attorney fees and costs, and this decision is affirmed. The amount of the award of attorney fees and costs is reversed and remanded for further proceedings consistent with this Opinion.

¶ 36 **DISMISSED IN PART, AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS.**

GOODMAN, V.C.J., and FISCHER, P.J., concur.

---

4. Current counsel states in his affidavit attached to the fee application that former counsel charged $150 an hour, but former counsel does not state this either by affidavit or in his invoice.

5. Certain postage expenses were also included in the fee amount. Pursuant to *Oklahoma Turnpike Authority v. New*, 1993 OK 42, ¶ 10, 853 P.2d 765, postage and mailing expenses and copying costs (as well as mileage and fax expenses) constitute part of the attorney's overhead and cannot be recovered as costs.